UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD E. KORB, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY, et al.,<br><br>   Defendants. | Case No. 12-cv-03847-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 31 |

Before the Court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction, and for failure to state a claim for relief. ECF No. 31. The Court will grant the motion.

I.   **BACKGROUND**

   A.   **Procedural History**

Plaintiff Richard Korb filed this action on July 23, 2012, against the Commissioner of the Social Security Administration (SSA) and the SSA Operations Center "for the purpose of obtaining judicial enforcement of a final decision of the Commissioner of Social Security (May 7, 2009) in Plaintiff's favor and subsequent SSA 'Notice of Award,' promising to send Plaintiff a check in the sum of $9,126.40." ECF No. 1 ¶ 1. Plaintiff's original complaint asserted jurisdiction based on his exhaustion of administrative remedies pursuant to 42 U.S.C. § 405(g). The Clerk of Court issued a Social Security Procedural Order, as it does in all cases seeking review of an SSA decision, on the day the original complaint was filed. ECF No. 2. That prompted Plaintiff to file his First Amended Complaint, which alleged:

> This is not an action to review an award by the Commissioner of Social Security. This is a mandamus action pursuant to 28 U.S.C.A. § 1361 to compel the Social Security Administration and its Commissioner to perform their duty pursuant to the final decision of the Commissioner of Social Security (May 7, 2009) in Plaintiff's favor and the subsequent SSA "Notice of Award," in which SSA stated they would send Plaintiff a check in the sum of $9126.40 — which, SSA has, notwithstanding

its final decision and award, refused to honor or enforce for over three years. ECF No. 4 ¶ 1. The First Amended Complaint also again alleged that Plaintiff had exhausted all administrative remedies and that the Court had jurisdiction pursuant to both 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. ECF No. 4 ¶ 4. The Court consequently vacated the procedural order pertaining to SSA appeals. ECF No. 7 (Hamilton, J.).

Plaintiff filed a Second Amended Complaint on October 22, 2012, which added claims for declaratory relief and an accounting. ECF No. 14. Defendants moved to dismiss on December 17, 2012, pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 15. Rather than responding, Plaintiff filed a Third Amended Complaint ("TAC"), which added his wife, Faye Korb, as Plaintiff, and augmented Plaintiff's factual allegations. ECF No. 29.[1] The TAC names the SSA and the SSA Commissioner as Defendants, and asserts that this Court has jurisdiction over Plaintiffs' claims pursuant to the mandamus statute, 28 U.S.C. § 1361, federal question jurisdiction, 28 U.S.C. § 1331, sections 702 and 706 of the Administrative Procedure Act, codified at 5 U.S.C.§§ 702 and 706, and Federal Rules of Civil Procedure 57 and 65. TAC, ECF No. 29, ¶ 1. Defendants again moved to dismiss on April 17, 2013, ECF No. 31, which motion the Court now considers.[2]

### B. Factual Allegations

The Court accepts the following allegations as true for the purpose of resolving this Rule 12(b)(6) motion. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

In March 1996, while returning home from work in San Francisco, Richard Korb was mugged near the West Oakland Bart Station, in Oakland, California. TAC ¶ 4. The injuries Korb received forced him to stop working. Id. He began receiving social security disability benefits in January 1999, which continued "sporadically" through 2004. Id.

---

[1] Plaintiff also unsuccessfully attempted to file an earlier version of his Third Amended Complaint, but the details are not relevant here.

[2] The Court previously found the matter suitable for disposition without oral argument. ECF No. 35.

In 2002, and again in 2005, the SSA erroneously claimed that it overpaid Korb. Id. ¶ 5. Both times, Korb appealed the decision, leading to over ten years of SSA process. Korb alleges that, during that time, he has spent in excess of five hundred hours writing letters, making phone calls, meeting with SSA field officers, attending hearings, and filing and litigating administrative appeals. Id. Twice, the SSA ruled in favor of Plaintiff, but Korb continues to receive letters demanding repayment of benefits for the period 1999–2004.

On May 30, 2008, SSA Administrative Law Judge Flannigan in the Oakland, California SSA office issued a decision that the SSA's position was unsubstantiated and that Korb had not been overpaid benefits. Id. ¶ 6.

On March 9, 2009, the SSA Appeals Council issued a "Notice of Appeals Council Action," stating that Korb was actually entitled to $10,529 from the SSA because of an underpayment of benefits. Id. ¶ 7. On May 7, the Appeals Council issued a final decision confirming both ALJ Flannigan's decision and the decision regarding Korb's underpayment. Id. ¶ 8. The SSA did not pay, and Korb did not claim, any additional benefits after that decision was issued. Id.

Despite numerous requests, Korb was unsuccessful in obtaining the $10,529 he was awarded until August 2, 2010, at which time the SSA sent Korb a "Notice of Award" informing him that he would receive a check for $9,126.90 per the May 2009 decision. Id. ¶ 9. The check never came. Id. Instead, SSA informed Korb that his case was still under investigation; simultaneously, the SSA continued to demand repayment for overpaid benefits via separate letters. Id.

Korb then asked his Congressman, Rep. John Garamendi, to intervene. Rep. Garamendi's staff sent a letter to the SSA, dated May 22, 2012, requesting an explanation. Id. ¶ 10. In response, on July 10, 2012, the SSA issued Korb a "Notice of Change in Benefits" disavowing the prior award for underpayment of benefits and demanding $59,208.90 for overpayment of benefits because, according to the SSA, Korb was employed from December 2000 through February 2005. Id. ¶ 11; Ex. A. Korb filed this action two weeks later.

Following the filing of this action, the SSA continued to send Korb correspondence concerning his case. Id. ¶ 12. On September 12, 2012, the SSA sent Korb billing statements for

3

1  $15,219.10 and $43,989.80 for overpayment. Id. ¶ 13. On October 8, 2012, the SSA issued a
2  "Notice of Revised Decision" with respect to the May 2009 final decision. On October 12, 2012,
3  the SSA issued a notice concluding that the SSA owes Korb $9,379.80.

4  Korb's wife, Faye Korb, also received disability benefits based on Richard Korb's
5  disability determination. Id. ¶ 14. From 2003 to 2004, the SSA withheld some of the benefits due
6  to Faye Korb and the couple's three children because of alleged overpayments. Id. According to
7  the TAC, Ms. Korb earned $20,000 in 2001, but the SSA claimed she earned $250,000. For
8  several years, the amount paid to Ms. Korb and the amount listed on her 1099 SSA Benefit
9  Statements, issued by the SSA, conflicted. Id. In late 2004 and in 2005, Ms. Korb was told her
10 case was closed and no amount was due. Id. ¶ 15. In August 2006, she learned that IRS and credit
11 bureaus were notified of a delinquency in the amount of $13,000; her credit score did not recover
12 until 2012. Id. Upon learning of the delinquency, Ms. Korb submitted a hardship appeal waiver
13 request. Id.

14 In June 2009, the SSA began demanding repayment from Ms. Korb again. Id. ¶ 16. On
15 August 27, 2012, the SSA demanded, via letter, $27,120. Id. ¶ 17A; Ex. B. On October 15, 2012,
16 the SSA withheld $5,972 in disability benefits due to Ms. Korb in order to "repay" the alleged
17 overpayment. Id. ¶ 17D. To date, the SSA demands repayment from Ms. Korb, and she has not
18 recovered any of the funds withheld due to overpayment over the last ten years. Id.

19 Finally, on October 16, 2012, three months after this action was filed, the SSA issued Korb
20 an accounting summary indicating that the SSA owed him $9,379.80, but that Korb owes the SSA
21 $83,657 in benefit checks that were returned or not cashed. Id. ¶ 17E. The accounting summary
22 states that Korb received $103,698 in disability benefits over three months in 1999, even though
23 the maximum disability benefit allowed Korb during that period was $1,454 per month. Id.
24 Stated differently, Korb alleges he was entitled to $96,007.80 in disability benefits from January
25 1998 to December 2004, and the SSA claims that they paid him $168,287. Id. ¶ 18. As Plaintiff
26 himself states in the Third Amended Complaint, "the math makes no sense."

27 Finally, Defendants submitted with their motion to dismiss a declaration stating that
28 Mr. Korb requested a review of the October 16, 2012 notice by letter dated November 19, 2012.

4

1  Gervasi Decl. ISO Mot. to Dismiss, ECF No. 31-1 ¶ 6, Ex. B. The SSA responded with a revised

2  determination on March 17, 2013, which informed Mr. Korb that "SSA no longer considered

3  Plaintiff to be overpaid." Id., ¶ 8, Ex. C. Mr. Korb requested reconsideration of that notice on

4  March 20, 2013. Id. ¶ 10, Ex. D. "SSA is currently processing Plaintiff's requested

5  reconsideration." Id. ¶ 12.

6  Mr. Korb seeks an accounting, and both Plaintiffs seek a declaration summarizing the

7  rights and obligations of the parties and an injunction prohibiting SSA from continuing to demand

8  repayment of past benefits, or from attaching or freezing SSA retirement benefits. Id. ¶ 25.

## II. LEGAL STANDARDS

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In resolving a facial attack, courts assume that the allegations are true, and draw all reasonable inferences in the plaintiff's favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air, 373 F.3d at 1039 (citations omitted).

On a Rule 12(b)(6) motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. den'd, --- U.S. ----, 132 S.Ct. 2101 (2012).

To survive a motion to dismiss, a plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." Starr, 652 F.3d at 1216 (original emphasis).

### III. ANALYSIS

The SSA moves to dismiss on the grounds that (1) Mr. Korb's claims are moot, and that Plaintiffs (2) failed to exhaust their administrative remedies and (3) failed to state a claim upon which relief may be granted.

#### A. Mootness

The SSA first moves to dismiss Plaintiff Korb's claims as moot because, according to SSA, it sent him a letter in March 2013 stating that Korb is "no longer considered" overpaid, and then sent Korb a check for $9,379.80. Mot. p. 4; Gervasi Decl., ECF No. 31-1, Ex. C p. 1.

An action is mooted "when the issues presented are no longer live and therefore the parties lack a legally cognizable interest for which the courts can grant a remedy," defeating Article III's "case or controversy" requirement. Alaska Ctr. For Env't v. U.S. Forest Serv., 189 F.3d 851, 856 (9th Cir. 1999). The burden of demonstrating mootness "is a heavy one." Flagstaff Med. Ctr. V. Sullivan, 962 F.2d 879, 884 (9th Cir. 1992). A fundamental principle weighing against unreserved

findings of mootness is the recognition that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W. T. Grant Co., 345 U.S. 629, 632 (1953). A case only becomes moot when (1) "it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979) (quoting W.T. Grant, 345 U.S. at 633).

Questions of mootness "often involve [a] 'highly individualistic . . . appraisal of the facts of each case' to determine if the doctrine applies." Alaska Ctr. For Env't, 189 F.3d at 856 (quoting 13A Wright & Miller, Fed. Prac. & Proc. § 3533 at 211–12 (2d ed. 1984)). Excepted from the mootness doctrine are "extraordinary" cases in which the challenged conduct "is capable of repetition but evades review." Id. (citing Weinstein v. Bradford, 423 U.S. 147, 148–49 (1975)). The exception is limited to cases where "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." Id. (citing Greenpeace Action v. Franklin, 14 F.3d 1324, 1329 (9th Cir. 1992)).

Here, the SSA presents a factual challenge to the Court's jurisdiction. In particular, the SSA seeks to supplement the allegations in the Third Amended Complaint with the following relevant facts: (1) Mr. Korb sought administrative review of the October 16, 2012 notice indicating that he would receive a check for underpaid benefits, Gervasi Decl., ¶ 6 & Ex. B; (2) the SSA responded to the request for review by letter on March 17, 2013, with a revised determination indicating that the SSA "no longer considered" Mr. Korb to be overpaid, id. ¶ 8 & Ex. C; and (3) Mr. Korb requested reconsideration of that revised determination (which did not revise the accounting discrepancies he complains of in this suit) by letter dated March 20, 2013, id. ¶ 10 & Ex. D.

Mr. Korb does not dispute that he received the check. But whether he received the check or not is irrelevant to the question of mootness, as his Third Amended Complaint asserts a claim for accounting and declaratory relief stemming from the SSA's inconsistent determinations over

7

the last ten years with respect to the exact accounting discrepancies that are the subject of the SSA's March 2013 "revised determination." The SSA's most recent determination does not moot those claims, because it cannot be said with assurance that there is no reasonable expectation the conduct will recur. Nor can the interim relief the SSA provided be characterized as irrevocable, since its determination is currently subject to reconsideration.

In Doe v. Rumsfeld, 435 F.3d 980, 984 (9th Cir. 2006), an Army veteran challenged the military's "stop-loss" authority pursuant to 10 U.S.C. § 12305, which was used to extend the plaintiff's military service beyond his one-year commitment. The government argued that the plaintiff's assignment to a medical retention center precluded him from being subject to the stop-loss statute, mooting his claim. Id. The Ninth Circuit rejected that argument because the assignment was "temporary," and there was no guarantee that, following the assignment to the medical retention center, the plaintiff would not have been returned to a permanent station. Id.

Similarly, in Doe v. Gallinot, 657 F.2d 1017, 1021 n. 6 (9th Cir. 1981), and in Chancery Clerk of Chickasaw Cnty., Miss. v. Wallace, 646 F.2d 151, 158 (5th Cir. 1981), the Ninth and Fifth Circuits held that the risk of recommitment following discharge from mental institutions precluded the application of the mootness doctrine to patients who were committed at the time the suit was filed, but later discharged.

Finally, in City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983), the City of Los Angeles instituted a moratorium on the use of chokeholds by police officers and moved to dismiss a pending lawsuit challenging the practice. The Supreme Court held that nothing prevented the city from re-instituting the practice, and therefore "[i]ntervening events have not irrevocably eradicated the effects of the alleged violation." Id. (quotation omitted).

The SSA relies on Back v. Sebelius, 684 F.3d 929, 933 (9th Cir. 2012), and Spencer-Lugo v. INS, 548 F.2d 870, 870–71 (9th Cir. 1977), in support of its argument that this case is moot. Both of those cases involved materially different facts from those present here. In Back, the plaintiff sought to compel the institution of a regulatory process that the defendant in fact instituted after the suit was filed. The Ninth Circuit held: "We have no reason to believe the Secretary or her agents will disavow or disregard the established regulatory process in the future.

8

Because the Secretary has already created the administrative appeals process that Back seeks, no present controversy exists as to which we can grant effective relief." 684 F.3d at 933 (quotation omitted). In Spencer-Lugo, the plaintiffs sought a writ of habeas corpus relating to summary deportation proceedings. The Ninth Circuit held the action became moot after INS offered the plaintiff to reopen their cases and provide them with "full-blown individualized hearing[s]." 548 F.2d at 870.

In both cases, an agency defendant provided the relief requested by a plaintiff in a manner that provided assurance the alleged misconduct would not recur: in Back, the defendant agreed that the plaintiff and other similarly situated parties were entitled, as a matter of institutional process, to the appeal procedure the plaintiff had sued to compel. In Spencer-Lugo, the government irrevocably gave the plaintiffs the relief they sought. Here, by contrast, the SSA has issued various conflicting determinations over time, and the SSA could issue another "revised determination" at any moment, reversing the decision to "no longer consider[]" Korb overpaid. Thus, the matter is not moot.

### B. Exhaustion

The SSA moves to dismiss on the alternative ground that Plaintiffs have failed to exhaust their administrative remedies, depriving this Court of subject matter jurisdiction.

The Social Security Act permits claimants to challenge denial of social security benefits after a "final decision" is rendered by the Commissioner. 42 U.S.C. § 405(g). Plaintiffs filing a civil action must meet two requirements: presentment and exhaustion. Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993). Presentment of a benefits claim to the Commissioner is a jurisdictional requirement, but exhaustion is not; the exhaustion requirement may therefore be waived by the SSA or the courts. Id. (citing Matthews v. Eldridge, 424 U.S. 319, 330 (1975)). The Act prohibits the bringing of any action against the SSA on "any claim arising under" Title II of the Act based on federal question jurisdiction, limiting the Court's jurisdiction to review decisions by the SSA to the procedures explicitly contained within the Act. 42 U.S.C. § 405(h). The Supreme Court has interpreted that provision broadly. See Weinberger v. Salfi, 422 U.S. 749, 756 (1975). Because this action relates to an accounting following the award of benefits, the exhaustion requirement

9

applies. See Bass v. Soc. Sec. Admin., 872 F.2d 832, 833 (9th Cir. 1989).

The exhaustion requirement embodies the policy of deferring to the SSA "in the first instance, both because of its superior 'expertise in administering its own regulations,' and because it is generally more efficient to allow the agency, if it can, to resolve disputes concerning the entitlement programs it administers." Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir. 1989) (quoting Bowen v. City of New York, 476 U.S. 467, 485 (1986)). It is required "as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." Salfi, 422 U.S. at 765. Nevertheless, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." Eldridge, 424 U.S. at 330.

A court may find waiver of the exhaustion requirement where the claim to be reviewed is "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir.1989) (citing Eldridge, 424 U.S. at 330) (internal quotations omitted). All three elements must be met. See Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1115–16 (9th Cir. 2003). However, "[t]he ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the Eldridge factors, but should also be guided by the policies underlying the exhaustion requirement." Bowen, 476 U.S. at 484.

Here, Plaintiffs have failed to establish that the waiver doctrine applies because their claims are not collateral to the SSA's benefits determinations. Waiver is not applicable where "a claimant sues in district court, alleging mere deviation from the applicable regulations in his particular administrative proceeding" because the claimant's claim is not collateral to the benefits determination. Bowen, 476 U.S. at 484. "In the normal course, such individual errors are fully correctable upon subsequent administrative review since the claimant on appeal will alert the

agency to the alleged deviation. Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context. Id., at 484–85.

Plaintiffs' claims here relate directly to their claims for benefits — the amount to which they are entitled, whether those amounts have been paid, and how the amounts have been determined. Essentially, what Plaintiffs allege "is a series of claimed irregularities in [their] individual cases that is entirely dependent on the[ir] underlying claims for benefits." Kildare v. Saenz, 325 F.3d 1078, 1083 (9th Cir. 2003).

The second requirement for waiver of exhaustion is irreparability of harm such that, absent judicial review, the plaintiff will suffer "injury which retroactive payments cannot remedy." Plaintiffs in prior cases who have demonstrated irreparability have, for example, shown they were living with their elderly mother while awaiting approval of their SSI application, because they had no other income, Johnson, 2 F.3d at 920, or alleged reliance on General Assistance and food stamps, a lack of medical insurance, and homelessness. Kildare, 325 F.3d at 1083.

Here, Plaintiffs allege that Ms. Korb filed an economic hardship waiver with the SSA in 2006, and otherwise do not provide any information about how the pendency of this case affects their current economic circumstances. Rather, they focus primarily on the SSA's allegedly unlawful seizure or withholding of money that belongs to them, Opp., ECF No. 33 p. 13–14, which, even if true, does not demonstrate economic hardship.

Because Plaintiffs have not established that their claims are collateral to a benefits determination, or that their claimed injuries are irreparable,[3] they have failed to establish that waiver of the exhaustion requirement is proper.

### C. Mandamus

Plaintiffs argue this Court has subject matter jurisdiction over this dispute independent from the Social Security Act, pursuant to the mandamus statute, 28 U.S.C. § 1361. That statute provides: "The district courts shall have original jurisdiction of any action . . . to compel an officer

---

[3] Because Plaintiffs have not demonstrated either of the first two requirements of waiver of exhaustion, the Court need not reach the third requirement.

or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." Id. In the context of an action against SSA, a writ of mandamus will lie only "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." Kildare, 325 F.3d at 1084 (quoting Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998)). Mandamus is appropriate only if the suit challenges "the authority of the [SSA] to take or fail to take an action as opposed to a decision taken within the [SSA's] discretion." Patel, 134 F.3d at 931–32.

Plaintiffs give scant attention to these requirements. The entirety of their argument in support of the Court's mandamus jurisdiction is as follows:

> Title 28 U.S.C. section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. This Court has held that § 1361 is an appropriate basis for jurisdiction in an action challenging procedures used in administering social security benefits. *Johnson*, 2 F.3d at 924-25 (finding that mandamus will lie if the officer owes plaintiffs a non-discretionary duty); *Lopez v. Heckler,* 725 F.2d 1489, 1507-08 (9th Cir. 1984), 469 U.S. 1082 (1984). Here Plaintiffs have exhausted their administrative remedies or shown they should be waived. The Commissioner should be now compelled to correct the aforementioned violations that violate the APA and due process.

Plaintiffs have not demonstrated that their claim is "clear and certain," that the SSA's duty is "nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt," or that no other adequate remedy is available. Accordingly, the Court concludes that it lacks jurisdiction under the federal mandamus statute.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Third Amended Complaint

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1  is hereby GRANTED.  Plaintiff's Third Amended Complaint is DISMISSED with leave to amend.

2  Any amendment shall be filed within forty-five days from the date of this order.

3  **IT IS SO ORDERED**.

4  Dated:  September 19, 2013

_____
JON S. TIGAR
United States District Judge