UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD E. KORB and FAYE Y. KORB,<br><br>Plaintiffs,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 4:12-cv-03847-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 43 |

This matter is once again before the Court on a motion to dismiss. ECF No. 43. The Court will GRANT the motion in part and DENY it in part.

I.   **BACKGROUND**

   A.   **Procedural History**

Plaintiff Richard Korb, an attorney, filed this action *pro se* on July 23, 2012, against the Commissioner of the Social Security Administration (SSA) and the SSA Operations Center "for the purpose of obtaining judicial enforcement of a final decision of the Commissioner of Social Security (May 7, 2009) in Plaintiff's favor and subsequent SSA 'Notice of Award,' promising to send Plaintiff a check in the sum of $9,126.40." ECF No. 1 ¶ 1. Richard's[1] original complaint asserted jurisdiction based on his exhaustion of administrative remedies pursuant to 42 U.S.C. § 405(g). The Clerk of Court issued a Social Security Procedural Order, as it does in all cases seeking review of an SSA decision, on the day the original complaint was filed. ECF No. 2. That prompted Richard to file his First Amended Complaint, which alleged:

   This is not an action to review an award by the Commissioner of Social Security.

---

[1] Because both of the parties have the same surname, but different claims, the Court refers to them by their first names to identify them. The Court intends no disrespect. See, e.g., In re Mele, 501 B.R. 357, 359 (B.A.P. 9th Cir. 2013).

> This is a mandamus action pursuant to 28 U.S.C.A. § 1361 to compel the Social Security Administration and its Commissioner to perform their duty pursuant to the final decision of the Commissioner of Social Security (May 7, 2009) in Plaintiff's favor and the subsequent SSA "Notice of Award," in which SSA stated they would send Plaintiff a check in the sum of $9126.40 – which, SSA has, notwithstanding its final decision and award, refused to honor or enforce for over three years.

ECF No. 4 ¶ 1. The First Amended Complaint also alleged, again, that Richard had exhausted all administrative remedies and that the Court had jurisdiction pursuant to both 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. ECF No. 4 ¶ 4. The Court consequently vacated the procedural order pertaining to SSA appeals. ECF No. 7 (Hamilton, J.).

Richard filed a Second Amended Complaint on October 22, 2012, which added claims for declaratory relief and an accounting. ECF No. 14. Defendants moved to dismiss on December 17, 2012, pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 15.

Rather than responding, Richard filed a Third Amended Complaint ("TAC"), which added his ex-wife, Faye Korb, as Plaintiff, and augmented Richard's factual allegations. ECF No. 29. The TAC named the SSA and the SSA Commissioner as Defendants, and asserted that this Court had jurisdiction over Plaintiffs' claims pursuant to the mandamus statute, 28 U.S.C. § 1361, federal question jurisdiction, 28 U.S.C. § 1331, sections 702 and 706 of the Administrative Procedure Act ("APA"), codified at 5 U.S.C.§§ 702 and 706, and Federal Rules of Civil Procedure 57 and 65. TAC, ECF No. 29 ¶ 1. Defendants again moved to dismiss on April 17, 2013. ECF No. 31. This Court dismissed Plaintiffs' TAC with leave to amend for lack of subject matter jurisdiction. ECF No. 47.

Plaintiffs filed a Fourth Amended Complaint ("FAC") on October 25, 2013, ECF No. 42, which again augmented Plaintiffs' allegations and asserted claims under the mandamus statute, 28 U.S.C. § 1361, sections 702 and 706–708 of the APA, codified at 5 U.S.C. §§ 702 and 706-08, and section 552a of the APA, 5 U.S.C. § 552a. FAC ¶ 1.

Defendants moved to dismiss on January 9, 2014, ECF No. 43, which motion the Court now considers.

**B.     Factual Allegations**

In March 1996, while returning home from work in San Francisco, Richard Korb was mugged near the West Oakland Bart Station, in Oakland, California. FAC ¶ 8. The injuries Richard received forced him to stop working. Id. He began receiving Social Security disability benefits in January 1999, which continued "sporadically" through 2004. Id.

In 2002, and again in 2005, the SSA erroneously claimed that it overpaid Richard. Id. ¶ 9. Both times, Richard appealed the decision, leading to over ten years of SSA process. Id. He alleges that, during that time, he has spent over five hundred hours writing letters, making phone calls, meeting with SSA field officers, attending hearings, and filing and litigating administrative appeals. Id. The SSA ruled in Richard's favor twice, but he continues to receive letters demanding repayment of benefits for the period from 1999 to 2004. Id. ¶¶ 9.

On March 9, 2009, the SSA Appeals Council issued a "Notice of Appeals Council Action" finding that: (1) Richard was not overpaid benefits, and (2) the SSA actually *owed* Richard benefits in the amount of $10,529. Id. ¶ 10. On May 7, 2009, this decision became the "final decision" of the SSA. Id. ¶ 12. The Notice of Appeals Council Action stated that the date of the notice of the initial determination was August 23, 2005. Id. ¶ 11. Accordingly, the SSA had the authority to modify the Commissioner's decision until August 22, 2009. Id.

Despite the SSA's issuance of a final decision, and Richard's repeated requests for payment, the SSA did not pay him for the next three and one-half years. Id. ¶ 13. On August 2, 2010, the SSA sent Richard a "Notice of Award" informing him that he would receive a check, id. ¶ 14, but the check never came, id. Instead, the SSA informed Richard that his case was still under investigation. Id. In separate letters, it also continued to demand repayment for overpaid benefits. Id.

Richard then asked his Congressman, Rep. John Garamendi, to intervene. Id. Rep. Garamendi's staff sent a letter to the SSA on May 22, 2012, requesting an explanation. Id. In response, on July 10, 2012, the SSA issued Richard a "Notice of Change in Benefits" disavowing the prior award for underpayment of benefits and demanding $59,208.90. Id.

Richard filed this action two weeks later. Id. ¶ 15.

After this action was filed, the SSA continued to send Richard correspondence about his case. Id. On September 12, 2012, the SSA sent him billing statements for $15,219.10 and $43,989.80 for overpayment. Id. On October 8, 2012, the SSA issued a "Notice of Revised Decision" with respect to the May 2009 final decision, "unilaterally revising the Commissioner's decision. Id. ¶ 17.

Then on October 16, 2012, three months after this action was filed, the SSA issued Richard an accounting summary indicating that the SSA owed him $9,379.80, not $10,529. Id. ¶ 19. However, the summary also stated that he had previously received $168,287.00 in benefits, including $103,698 in disability benefits over three months in 1999, even though the maximum disability benefit allowed Richard during that period was $1,454 per month. Id. The summary also stated that Richard should have been paid $96,007.80, and that $83,657.00 in benefit checks sent to him were returned or not cashed. Id. Richard, believing these amounts to be incorrect, requested records from the SSA to support the summary. Id. ¶ 21. The SSA refused to produce additional supporting documentation, claiming that the records were in the possession of the Treasury Department, or, alternately, that they had been destroyed. Id.

On March 17, 2013, Richard received a "revised" accounting summary, stating that he should have received $93,081.90 in benefits, not $96,007.80, and that he was "no longer considered to be overpaid." Id. ¶ 24. The revised summary also deleted any reference to disability checks totaling $83,657 that were returned or not cashed by Richard, and stated that the SSA sent him a check for $9,379.80 in September 2012. Id. The revised accounting summary allowed for Richard to appeal the SSA's decision. He appealed by letter on March 20, 2013.

The SSA submitted, as an exhibit to a Joint Case Management Statement, its response to Richard's March 20 request for reconsideration. ECF No. 38 at 8. The response reiterates that Richard is no longer considered either overpaid or underpaid, by virtue of the $9,379.80 check he received after this suit was filed. It also confirms the accounting summary and states that Richard is entitled to appeal to an Administrative Law Judge. Richard sent the SSA a letter appealing the determination on July 25, 2013. According to a supplemental declaration Richard submitted in support of his opposition to the SSA's motion to dismiss, he has not heard from the SSA in the

4

subsequent eight months.  Korb Supp. Decl., ECF No. 50 ¶ 2.

Richard Korb's ex-wife, Faye Korb, also received disability benefits based on Richard's disability determination.  Id. ¶ 25.  From 2003 to 2004, the SSA withheld some of the benefits due to Faye and the couple's three children because of alleged overpayments.  Id. ¶ 28.  According to the FAC, Faye earned $20,000 in 2001, but the SSA claimed she earned $250,000.  Id.  For several years, the amount paid to Faye and the amount listed on her 1099 SSA Benefit Statements, issued by the SSA, conflicted.  Id. ¶ 29.  In 2005, Faye was told her case was closed and no amount was due.  Id. ¶ 30.  However, she later learned that the IRS and credit bureaus had been notified in 2005 of a delinquency in the amount of $13,000.  Id. ¶ 29.  This damaged her credit score, which did not recover until 2012.  Id. ¶ 29.

After a brief lull, the SSA began to send demand letters to Faye in about 2007.  Id. ¶ 30.  On the advice of the SSA, she submitted an economic hardship appeal waiver request.  Id.  She was told she would be notified if her appeal was denied.  Id.  Three years passed, and she began receiving "demand for repayment" letters again.  Id.

After Richard's favorable 2009 determination, Faye attempted to persuade SSA to amend its accounting and stop sending her notices of overpayment.  Id. ¶ 31.  The attempt failed, and in June 2010, Faye received a notice indicating that she had been overpaid $14,103.00 in benefits.  Id. ¶ 31.  On August 27, 2012, the SSA sent a letter demanding $27,120.  Id. ¶ 32; Ex. B.  On October 15, 2012, the SSA withheld $5,972 in disability benefits due to Faye in order to "repay" the alleged overpayment.  Id. ¶ 33.  In March 2013, the Treasury withheld federal tax refunds from Faye on behalf of the SSA.  Id. ¶ 34.  Then, in October 2013, Faye received a letter demanding repayment of $7,520 and $1,712.  Id. ¶ 36.  The SSA continues to demand repayment from Faye, and she has not recovered any of the funds withheld over the last ten years due to alleged overpayments.  Id.

The FAC alleges that Faye's benefits were entirely derivative of Richard's, and that the SSA's decision finding he was underpaid applies equally to Faye.  Plaintiffs also allege that field representatives of the Mission Viejo, California SSA office informed them that the SSA continued to erroneously pursue repayment from Faye because Richard did not add her to this suit as a

5

1   plaintiff until April 2013.  Id. ¶ 26.

2       Defendants submitted with their motion to dismiss a declaration stating that Faye contacted
3   the SSA on October 10, 2012 indicating that she had filed for a waiver of her overpayment.
4   Gervasi Decl. ISO Mot. to Dismiss, ECF No. 43 ¶ 13.  The SSA informed Faye that it had no
5   waiver request on record.  Id.  Faye indicated that she would send a waiver form.  Id.  As of the
6   filing of its motion the SSA declares that it has no waiver form on record.  Id. ¶ 14.

7       The same declaration states that Richard requested a review of the October 16, 2012 notice
8   sent by the SSA, which informed Richard that he would receive $9,379.80, and contained an
9   accounting of benefits he had been paid.  Id. ¶ 6; Ex. B.  The SSA responded with a revised
10  determination on March 17, 2013, which informed Richard that "SSA no longer considered
11  Plaintiff to be overpaid."  Id. ¶ 8; Ex. C.  Richard requested reconsideration of that notice on
12  March 20, 2013.  Id. ¶ 10; Ex. D.  The declaration states that the "SSA is currently processing
13  Plaintiff's requested reconsideration."  Id. ¶ 12.  Over one year has passed since the
14  reconsideration was requested.

15      The FAC makes claims for violation of the APA, "wrongful seizure of property by a
16  federal agency," mandamus, and declaratory and injunctive relief.  Both plaintiffs seek an injunction
17  prohibiting SSA from continuing to demand repayment of past benefits or from seizing further
18  assets, and a declaration that neither plaintiff owes the SSA any money.  Id. ¶ 36.  Richard also
19  seeks an order requiring the SSA to produce documentation of its accounting of his benefits, or to
20  pay him the full amount owed according to his 2009 Notice of Decision.  Id. at 18.

21  **II.    LEGAL STANDARDS**

22      "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the
23  challenger asserts that the allegations contained in a complaint are insufficient on their face to
24  invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the
25  allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air for
26  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  In resolving a facial
27  attack, courts assume that the allegations are true, and draw all reasonable inferences in the
28  plaintiff's favor.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).

Further,

> In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.

Safe Air, 373 F.3d at 1039 (citations omitted).

On a Rule 12(b)(6) motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.    ANALYSIS

The SSA moves to dismiss on the grounds that (1) Plaintiffs have not exhausted their administrative remedies, (2) Plaintiffs have identified no basis for waiving the exhaustion requirement, (3) the mandamus statute does not confer jurisdiction, and (4) Plaintiffs have not stated a claim upon which relief can be granted.[2]

///

///

---

[2] Although the Defendants purport to move for failure to state a claim upon which relief can be granted, their memorandum simply restates their arguments concerning jurisdiction. ECF No. 43 at 11-12. Thus, the Court will not separately address this ground.

A.     **Richard Korb**

1.     **Exhaustion of Administrative Remedies**

Defendant argues that the Social Security Act provides the exclusive basis for subject matter jurisdiction over Plaintiff's claims because they arise under the Social Security Act. With the exception of Plaintiff's mandamus claim, Defendant is correct.

This federal court may not hear a case unless the party bringing it establishes the Court's jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The sole jurisdictional basis for review of administrative decisions concerning claims for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq. and 1381 et seq., is set forth in 42 U.S.C. § 405(g). Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1111 (9th Cir. 2003) ("Jurisdiction over cases 'arising under' Social Security exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review."). The Social Security Act provides that plaintiffs must exhaust all available administrative remedies before seeking judicial review of any such claim. 42 U.S.C. § 405(g). "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992).

The Supreme Court has interpreted the term "arising under" broadly to require that "virtually all legal attacks" be channeled through the administrative process. See Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000). "The statutory judicial review bar, under 42 U.S.C.A. § 405(h) . . . is not limited to claims for monetary benefits." 30 Fed. Procedure, L. Ed. § 71:594. To determine whether a claim "arises under" the Social Security Act, the Court applies two tests: first, "claims that are "inextricably intertwined" with a [Social Security] benefits determination may arise under [the Social Security Act], and second, "claims in which 'both the standing and the substantive basis for the presentation' of the claims" is the [Social Security] Act may arise under [that Act]." Kaiser, 347 F.3d at 1112.[3] Included in section 405's scope are

---

[3] Kaiser is binding authority even though it involved Medicare benefits. "[T]he Medicare Act incorporates the provisions of section 405(b), (g) and (h) of Title 42, the Social Security Act, to the same extent they are applicable to the Social Security Act." Erringer v. Thompson, 189 F. Supp. 2d 984, 988 (D. Ariz. 2001).

8

"[c]laims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy." Shalala, 529 U.S. at 13-14. "Simply put, the type of remedy sought is not strongly probative of whether a claim falls under § 405(h)." Kaiser, 347 F.3d at 1112.

Here, the Court concludes that Richard's first (violation of the APA), second (wrongful seizure of property), and fourth (declaratory and injunctive relief) claims all "arise under" the Social Security Act because they are "inextricably intertwined" with a Social Security benefits determination – either the May 2009 final determination, or one of the SSA's subsequent determinations, such as its October 8, 2012 "Notice of Revised Decision." This means that he was required to exhaust those claims administratively before filing a federal action. Johnson v. Shalala, 2 F.3d 918, 920 (9th Cir. 1993).

As he did previously, Richard again argues that the exhaustion requirement should be waived in this case. "The exhaustion requirement . . . is not jurisdictional, and thus, is waivable by either the Secretary or the courts." Id. at 921 (citing Matthews v. Eldridge, 424 U.S. 319, 330 (1975)). The Court applies a three-part test to determine whether it should find judicial waiver: the claim must be "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir. 1989) (citing Eldridge, 424 U.S. at 330) (internal quotations omitted). All three elements must be met. See Kaiser, 347 F.3d at 1115–16.

The Court previously concluded that Richard had not satisfied the requirements for judicial waiver of the administrative exhaustion requirement. See Order, ECF No. 40 at 9–11. Nothing in the FAC changes the Court's analysis with regard to his first (violation of the APA), second (wrongful seizure of property), and fourth (declaratory and injunctive relief) claims for relief. Accordingly, those claims must be dismissed.

### 2. Mandamus

Richard's mandamus claim requires a different analysis, because subsequent proceedings and a careful reading of the FAC persuade the Court that Richard's claim is not a request for *review* of any agency action, but one for *enforcement* of the May 2009 final decision in his favor. As to that claim, there is no further process left to exhaust.

Plaintiffs allege (and the SSA does not dispute) that the SSA rendered a final decision in May 2009 in Richard's favor.[4] The FAC alleges the final decision related to a notice of initial determination made on August 23, 2005. The SSA's regulations permit the SSA to reopen a determination or decision within one year of the relevant notice of initial determination, "for any reason," or within four years for "good cause." 20 C.F.R. § 404.988(a)–(b).[5] Consequently, the SSA was precluded from reopening the final decision after August 23, 2009. Richard's position is that the SSA's unilateral revision of the final decision on July 10, 2012, when it issued Korb a "Notice of Change in Benefits" disavowing the prior award for underpayment of benefits and demanding $59,208.90, was *ultra vires*. FAC ¶ 14. Korb asserts the notice was without legal effect because it fell outside the four-year limitation contained in 20 C.F.R. § 404.988(b).

Thus, Richard does not seek "judicial review" of agency action pursuant to 45 U.S.C. § 405(g). This case is not an "appeal" from a decision of the SSA, but an attempt to secure repose

---

[4] At oral argument, the SSA contended for the first time that the decision was not final because Richard did not appeal the decision made *in his favor* as required by 20 C.F.R. § 404.900. The notion that someone would appeal a decision in his favor, much less be required to do so, defies common sense. It also departs from the express terms of the SSA's regulations, which provide a claimant an opportunity to appeal a determination "[i]f you [the claimant] are dissatisfied" with the determination." Richard was not "dissatisfied" with the SSA's May 2009 decision.

Although the record does not disclose whether the final decision rendered in Richard's favor was made by an administrative law judge or the SSA Appeals Council (and Richard has alternately alleged both), the result would be the same in either instance. If the former, the ALJ's decision is final and binding on the SSA, because neither the SSA nor Richard appealed. See 20 C.F.R. § 404.955. If the latter, then the decision was necessarily final, as the Appeals Council is the last level of review required by the SSA's regulations prior to appeal to a federal district court. See 20 C.F.R. § 404.981.

[5] The same regulation permits the reopening of a case "at any time" for a number of enumerated reasons, none of which the SSA asserts here.

through administrative *res judicata* based on the SSA's own determination that Richard was under-paid. See United States v. Utah Constr. & Min. Co., 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."); Stuckey v. Weinberger, 433 F.2d 904, 909–10 (9th Cir. 1973) (holding that "res judicata principles are applicable to the findings and decisions of the SSA" that are made "on the merits" and "become final").

In those instances where the SSA reopens or reconsiders its own benefits determination for reasons other than those provided in 20 C.F.R. § 404.988 or analogous regulations, the administrative exhaustion requirement does not apply. See, e.g., Koolstra v. Sullivan, 744 F. Supp. 243, 245 (D. Colo. 1990) (though plaintiff had not exhausted, court had mandamus jurisdiction where SSA unilaterally reopened determination in contravention of SSA regulations); Hennings v. Heckler, 601 F. Supp. 919, 925 (N.D. Ill. 1985) (though plaintiff had not exhausted, court had mandamus jurisdiction to consider whether SSA violated reopening regulations). Accordingly, the question is not whether Richard has adequately invoked jurisdiction under § 405(g), but whether he has adequately invoked the Court's mandamus jurisdiction. See 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action . . . to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff."); Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218-19 (1930) ("Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary.").

The Ninth Circuit has found that mandamus is an "appropriate basis for jurisdiction in an action challenging procedures used in administering social security benefits," but that mandamus will lie only if "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998)). Mandamus is appropriate only if the suit

11

1  challenges "the authority of the [SSA] to take or fail to take an action as opposed to a decision

2  taken within the [SSA's] discretion." Patel, 134 F.3d at 931–32.  However, mandamus may

3  "compel action, when refused, in matters involving judgment and discretion" as long as it does not

4  "direct the exercise of judgment or discretion in a particular way." Wilbur, 281 U.S. at 218.

5  Mandamus jurisdiction lies to compel the SSA to pay benefits it has unreasonably withheld. See

6  e.g. Briggs, 886 F.2d at 1142.

7      Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 761 (5th Cir. 2011), is

8  instructive.  In that case, the Fifth Circuit held that a failure to carry out binding, final SSA

9  decisions warranted mandamus relief.  A Medicare contractor[6] had withheld payment from the

10  plaintiff despite a final decision issued by an ALJ requiring him to pay in full.  The court held that

11  mandamus relief was appropriate because "the plaintiff [did] not seek a redetermination of

12  administrative decisions . . . but rather enforcement of these administrative decisions." Id. at 764.

13  The court further held that a Medicare contractor had a "nondiscretionary duty to issue payment

14  for a successfully appealed claim" finally determined in the plaintiff's favor. Id. at 769.

15      Like the plaintiff in Wolcott, Richard alleges that the Commissioner of Social Security has

16  already made a final, favorable decision in his case.  FAC ¶ 10.  Under section 405(h) of the

17  Social Security Act, "the findings and decisions of the Secretary after a hearing shall be binding

18  upon all . . . who were parties to such hearing."  42 U.S.C. § 405(h).  The SSA's ability to revise

19  the May 2009 final determination expired as of August 22, 2009.  20 C.F.R. § 404.957.

20      The Court finds that Richard has established a clear and certain claim against the SSA for

21  the nondiscretionary enforcement of the Commissioner's final decision favorable to him, for

22  which no other adequate remedy is available.  Accordingly, the Court has mandamus jurisdiction

23  to entertain that claim.[7]

---

[6] The Secretary of the Department of Health & Human Services delegates the administration of the Medicare Act to the Centers for Medicare and Medicaid Services ("CMS").  CMS contracts with private insurance companies to perform carrier functions. See 42 C.F.R. § 421.5.  The private Medicare contractors process claims, such as those at issue in Wolcott.

[7] Because Richard can only invoke the Court's jurisdiction to enforce the final decision, and because it appears the SSA has already paid the bulk of the sum which Richard alleges he was

The prior conclusion applies only to Richard's claim for enforcement of the May 2009 final decision, and does not extend to Richard's request for an accounting. His accounting claim is based on events that occurred after the SSA issued its May 2009 final decision. Because Richard has not demonstrated that there is no further process left to exhaust, and because his accounting claim is not "clear and certain," the Court will not exercise mandamus jurisdiction over that claim.

### B.     Faye Korb

Faye's claims are premised on a distinct set of allegations. Unlike Richard, Faye was not a party to the administrative appeal that resulted in the May 2009 final decision. Faye alleges that the SSA revised her overpayment determination in June 2010, thirteen months after the final decision. FAC ¶ 31. The FAC alleges that she received a further notice in August 2012, that the SSA withheld benefits in October 2012, and that in March 2013, the Treasury withheld tax refunds from her as repayment. FAC ¶¶ 31–34. Finally, Faye alleges that she pursued administrative process concerning these notices.

There are significant differences between Faye's claim and her husband's. First, Faye was not a party to the original administrative appeal, so she cannot argue that the SSA's subsequent actions revised any determinations concerning her benefits outside of the time set forth in 20 C.F.R. § 404.988. Second, it is unclear whether Faye even has standing to appeal the May 2009 final determination, since she appears not to have been a party to that determination. See FAC, ECF No. 42, at 9 ("The claims and benefits of Plaintiff Faye Korb are derivative of those of Mr. Korb.").[8] Even assuming that she does have standing, however, Faye does not allege that the SSA took any action in violation of 20 C.F.R. § 404.988. Instead, she alleges that the SSA revised her overpayment determination in June 2010, thirteen months after the final decision, well within the

---

awarded, it would appear that this case amounts to a dispute over $1,149.20.

[8] The record regarding the prior proceedings is not clear because neither party has filed a certified copy of the transcript below. The Court originally ordered the Defendant to serve and file the transcript, ECF No. 2, but later vacated that order.

13

four-year limitation period. FAC ¶ 31. The FAC alleges that Faye received a further notice in August 2012, that the SSA withheld benefits in October 2012, and that in March 2013, the Treasury withheld tax refunds from her as repayment. FAC ¶¶ 31–34. Finally, Faye alleges that she pursued administrative process concerning these notices.

Faye's claim is, in essence, a claim for reconsideration of the SSA's determinations concerning her overpayment status. She has not alleged that the SSA has acted without legal authority (as Richard alleges it did with respect to him). She has not adequately alleged facts that would excuse her from section 405(g)'s exhaustion requirement. And she has failed to allege that she exhausted the administrative process made available to her. The Court can only find that Faye has failed to satisfy the exhaustion requirement.[9]

For similar reasons, the Court finds that Faye has not invoked the Court's mandamus jurisdiction. Unlike Richard, she has other remedies available to her, including the administrative process she is already pursuing.

## IV. CONCLUSION

For the reasons stated above, both Plaintiffs' first (violation of the APA), second (wrongful seizure of property), and fourth (declaratory and injunctive relief) claims for relief are hereby DISMISSED. The SSA's motion to dismiss the third claim for relief pursuant to the mandamus statute, 28 U.S.C. § 1361, is hereby DENIED as to Richard Korb, and GRANTED as to Faye Korb. All of Faye Korb's claims in this case are therefore DISMISSED. No Plaintiff may amend the FAC without leave of Court.

The Court further ORDERS as follows:

1. No later than ninety days from the date of this Order, Defendants shall serve and file a certified copy of the transcript of the administrative record concerning Richard Korb;

---

[9] Plaintiffs both also invoke their due process rights as a ground for avoiding the exhaustion requirement. It is true that a plaintiff raising a "colorable" constitutional claim against the SSA challenging conduct that is "entirely collateral to his substantive claim of entitlement" need not satisfy the exhaustion requirement. See Boettcher v. Sec'y of Health & Human Servs., 759 F.2d 719, 721 (9th Cir. 1985). This is not such a claim, however, because Plaintiffs seek relief directly related to their substantive claim of entitlement, as the Court previously determined in dismissing the Third Amended Complaint.

2. No later than sixty days from the date of the filing of the administrative record, Defendants shall file a motion for summary judgment. Defendants' motion may address the Court's mandamus jurisdiction in light of a fuller record;

3. Richard Korb shall file any opposition or counter-motion within fourteen days of service of the motion for summary judgment;

4. Defendants shall file any reply in support of the motion for summary judgment within fourteen days of service of the opposition to the motion;

5. Richard Korb shall file any reply in support of any counter-motion within seven days of service of Defendants' reply;

6. Unless the Court Orders otherwise, upon conclusion of the briefing schedule, the Court will take the matter under submission without oral argument.

**IT IS SO ORDERED**.

Dated: June 4, 2014

_____
JON S. TIGAR
United States District Judge