UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD E. KORB, et al.,

             Plaintiffs,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

Case No.  12-cv-03847-JST

**ORDER DENYING MOTION FOR
SANCTIONS AND COSTS**

Re: ECF No. 83

Before the Court is Plaintiff Richard E. Korb's Motion for Sanctions and Costs.  ECF No. 83.  The Court will deny the motion.

I.    **BACKGROUND**

    A.    **Factual History**

Plaintiff began receiving Social Security benefits in 1999 after sustaining injuries that forced him to stop working.  ECF No. 42 ¶ 8.  Between 2002 and 2009, Plaintiff and the Social Security Administration ("SSA") engaged in a series of communications disputing the amount of benefits due Plaintiff, culminating in separate decisions by two different administrative law judges and a review by the SSA Appeals Council.  ECF No. 59, Exs. 2-7.  In March 2009, the Appeals Council tentatively found that Plaintiff was owed $10,529 in underpaid benefits, and on May 7, 2009, the Council issued a "final decision of the Commission of Social Security" vacating the administrative law judges' two decisions and determining the SSA underpaid Plaintiff $8,819 in benefits.  ECF No. 59, Ex. 8.

Despite the SSA's issuance of a final decision, and Plaintiff's repeated requests for payment, the SSA did not pay him for the next three and one-half years.  ECF No. 42 ¶ 13.  During this time, the SSA sent Plaintiff a "Notice of Award" informing him that the SSA had "approved [his] application for disability benefits" for which he would "receive a check for

1    $9,126.90," but subsequently sent a "Notice of Change in Benefits" stating the SSA overpaid

2    Plaintiff $59,208.90 in benefits.  ECF No. 59, Exs. 11, 15.  In response, Plaintiff filed this suit on

3    July 23, 2012 to compel payment of the 2009 benefits award.  ECF No. 1.

4         On October 16, 2012, the SSA sent a "Notice of Important Information" stating it would

5    send Plaintiff a check for $9,379.80 because of "an additional lump-sum payment."  ECF No. 59,

6    Ex. 19.  The SSA paid Plaintiff the $9,379.80 amount in October 2012 and confirmed that was the

7    only payment the SSA made to Plaintiff since 2002.  ECF No. 59-1, Stifler Decl. ¶ 3(t) & Ex. 24.

8    On March 17, 2013, the SSA sent Plaintiff a "Notice of Disability Cessation," which stated

9    Plaintiff was no longer considered overpaid and included an accounting summary of Plaintiff's

10   benefits payment history.  ECF No. 59, Ex. 21.  Plaintiff appealed by letter on March 20, 2013,

11   and requested reconsideration of that notice and an accounting of the benefits owed to him.  ECF

12   No. 59, Ex. 22.

13        In its "Notice of Reconsideration," the SSA reiterated that Plaintiff is no longer considered

14   either over- or underpaid, by virtue of the $9,379.80 check he received.  ECF No. 59, Ex. 23.  The

15   notice also confirmed the accounting summary the SSA previously sent Plaintiff and stated that

16   Plaintiff is entitled to appeal to an administrative law judge.  Id.  On July 25, 2013, Plaintiff sent

17   the SSA a letter requesting a hearing before an administrative law judge on his reconsideration

18   determination.  ECF No. 50, Korb Supp. Decl. ¶ 2.  Between August 28, 2014 and December 3,

19   2014, Plaintiff exchanged a series of emails with SSA employees regarding his pending appeal.

20   ECF No. 66, Ex. C.  On December 1, 2014, the SSA informed Plaintiff that his appeal had been

21   forwarded to the Oakland, California, Hearing Office of the SSA Office of Disability Adjudication

22   and Review for review by an administrative law judge.  ECF No. 69, Smith Decl. ¶ 3.

23        SSA hearings were held on May 29, 2015 and September 11, 2015 to determine whether

24   Plaintiff has been overpaid or underpaid disability insurance benefits.  See ECF No. 83-10, Ex. I.

25   The Administrative Law Judge ("ALJ") determined that there was a residual balance of

26   $23,066.00 owed to Plaintiff for a May 1999 disability payment.  Id.  The ALJ found that a check

27   had never been issued to him in this amount.  Id.

28        The parties no longer dispute whether Plaintiff is still owed benefits.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

### B.     Procedural History

Plaintiff filed this action *pro se* on July 23, 2012 "for the purpose of obtaining judicial enforcement of a final decision of the Commissioner of Social Security (May 7, 2009) in Plaintiff's favor and subsequent SSA 'Notice of Award,' promising to send Plaintiff a check in the sum of $9,126.40." ECF No. 1 ¶ 1. Plaintiff's original complaint asserted jurisdiction based on his exhaustion of administrative remedies pursuant to 42 U.S.C. § 405(g). On July 23, 2012, the Clerk of the Court issued a "Procedural Order for Social Security Review Actions," which stated, as is customary in Social Security appeals that "the Court's jurisdiction is limited to reviewing the administrative record to determine whether the decision is supported by substantial evidence in the record . . . ." ECF No. 2. In response to the procedural order, Plaintiff filed his First Amended Complaint, which alleged:

> This is not an action to review an award by the Commissioner of Social Security. This is a mandamus action pursuant to 28 U.S.C.A. § 1361 to compel the Social Security Administration and its Commissioner to perform their duty pursuant to the final decision of the Commissioner of Social Security (May 7, 2009) in Plaintiff's favor and the subsequent SSA "Notice of Award," in which SSA stated they would send Plaintiff a check in the sum of $9126.40 – which, SSA has, notwithstanding its final decision and award, refused to honor or enforce for over three years.

ECF No. 4 ¶ 1. The First Amended Complaint also alleged that the Court had jurisdiction pursuant to both 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. Id. ¶ 4.

Plaintiff filed a Second Amended Complaint on October 22, 2012, which added claims for declaratory relief and an accounting. ECF No. 14. Defendants moved to dismiss on December 17, 2012, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and for failure to state a claim, respectively. ECF No. 15.

Rather than opposing the motion, Plaintiff filed a Third Amended Complaint, which added his ex-wife, Faye Korb, as Plaintiff, and augmented Plaintiff's factual allegations. ECF No. 29. The TAC named the SSA and the SSA Commissioner as Defendants, and asserted that the Court had jurisdiction over Plaintiffs' claims pursuant to the mandamus statute, 28 U.S.C. § 1361, and federal question jurisdiction, pursuant to 28 U.S.C. § 1331, as an action brought under the Administrative Procedures Act ("APA"). ECF No. 29 ¶ 1. Defendants again moved to dismiss,

1   ECF No. 31, and the Court dismissed Plaintiffs' Third Amended Complaint with leave to amend

2   for lack of subject matter jurisdiction, ECF No. 47.

3        Plaintiffs filed a Fourth Amended Complaint on October 25, 2013, which again augmented

4   Plaintiffs' allegations and asserted claims under the mandamus statute, 28 U.S.C. § 1361, and the

5   APA.  ECF No. 42.  Defendant again moved to dismiss.  ECF No. 43.  The Court dismissed both

6   Plaintiffs' first (violation of the APA), second (wrongful seizure of property), and fourth

7   (declaratory and injunctive relief) claims.  ECF No. 55.  The Court denied the motion to dismiss

8   Plaintiffs' third claim for mandamus relief as to Plaintiff, but granted the motion as to Faye Korb,

9   dismissing all of her claims.  ECF No. 55.  Plaintiff's claim for mandamus jurisdiction extended to

10  the enforcement of the May 2009 final decision but not to Plaintiff's request for an accounting.

11  See id. at 12.

12       On December 1, 2014, the SSA moved for summary judgment on Plaintiff's remaining

13  mandamus claim.  ECF No. 62.  The Court denied the motion for summary judgment, and granted

14  Plaintiff's Rule 56(d) motion because Plaintiff did not have the opportunity to make full discovery

15  in the case.  ECF No. 75.  The case had previously proceeded pursuant to the standard procedural

16  order for Social Security cases, which limited the Court's review to what is contained in the SSA's

17  administrative record.  No discovery had been undertaken by either party.  Id. at 5.  However,

18  because Plaintiff's mandamus claim was before the Court, the Court ordered that the SSA provide

19  discovery to "allow Plaintiff to ascertain whether the SSA's payments to him satisfy in form and

20  in amount the May 2009 judgment."  Id. at 6 n.4.

21       After this Court opened discovery, Plaintiff received copies of canceled Treasury checks

22  issued to him during his payment history.  The SSA had previously asserted that Plaintiff could

23  not obtain copies of the checks from the SSA because the copies must be obtained from the

24  Department of Treasury (which issues them) and/or that the checks had been destroyed.  See ECF

25  No. 62 at 8 (citing to SSA's Policy and Operations Manual System (POMS) GN 02401.001,

26  available at http://policy.ssa.gov/poms.nsf/lnx/0202401001).  The SSA had also represented that it

27  attempted to obtain copies of the checks issued by accessing a database that interfaces with

28  Treasury – the Treasury Check Information System ("TCIS") – but that the images themselves

were unavailable.  ECF No. 89 at 5.  Instead, the SSA provided Plaintiff with documentation and payment history through the SSA's Payment History Update System ("PHUS").  See ECF No. 59-1 at 91–113.  However, through a second SSA database that interfaces with Treasury – the Payments, Claims, and Enhanced Reconciliation ("PACER") – images of the checks were ultimately produced to Plaintiff.  ECF No. 89 at 6.  At a subsequent further case management conference held on August 19, 2015, counsel for the SSA informed the Court that it was previously not aware of this second database.

Plaintiff now brings the instant motion for monetary and non-monetary sanctions, arguing that the SSA obstructed access to the check images and engaged in other misconduct that cumulatively delayed the case.  ECF No. 83.

## II.    LEGAL STANDARD

The Court derives its authority to sanction a party for improper conduct from three primary sources:  (1) Federal Rule of Civil Procedure 11, (2) 28 U.S.C. section 1927, and (3) the Court's inherent authority.  Fink v. Gomez, 239 F.2d 989, 991 (9th Cir. 2001).  Plaintiff requests that the Court impose sanctions pursuant to the Court's inherent authority.  See ECF No. 83 at 7.

Under its inherent power, a court may impose sanctions for "willful disobedience of a court order" or "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Fink, 239 F.3d at 991 (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)).  Sanctions are only available "if the court specifically finds bad faith or conduct tantamount to bad faith."  Fink, 239 F.2d at 994.  Conduct that is tantamount to bad faith includes "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  Id.  A bad-faith finding may arise where a party commits fraud upon the court, delays or disrupts litigation, or hampers enforcement of a court order.  See Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (citations omitted).

The inherent power to sanction is meant to "vindicat[e] judicial authority."  Id.  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  Id. at 44.

## III.    DISCUSSION

Plaintiff contends that the SSA misrepresented the availability of the copies of Treasury

United States District Court
Northern District of California

1    checks and that the SSA unnecessarily opposed discovery and engaged in frivolous motion

2    practice.  See ECF No. 83.  According to Plaintiff, this case could have resolved in October of

3    2012 had SSA "simply decided to cooperate and disclose the back-up records."  Id. at 10.  Plaintiff

4    states that he has incurred nearly 400 hours of litigation time over three years, and that his

5    $23,066.00 award "represents present loss in interest of $45,029.00."  Id. at 9–10.  Plaintiff

6    suggests that the Court sanction Defendants for $84,939 – totaling Plaintiff's lost interest over 16

7    years and his opportunity costs in litigating the action.  Id. at 10.  Plaintiff further requests that the

8    Court enjoin the SSA from making further repayment demands.  Id.

9         In response to Plaintiff's motion, the SSA first argues that the Court should deny the

10   motion because it is procedurally deficient.  ECF No. 89 at 8.  The SSA points out that Civil Local

11   Rule 7-8(c) requires Plaintiff to file the motion as soon as practicable, and that sanctions based on

12   Federal Rules of Civil Procedure 11 and Rule 37 require Plaintiff to meet and confer with the SSA

13   before filing the motion.  Neither of these objections has merit.  Plaintiff bases his motion in part

14   on the outcome of the ALJ hearing in September 2015, and filed his motion in December 2015.

15   Plaintiff did not delay unnecessarily (indeed, given the SSA's conduct over the course of this

16   proceeding, it is ironic that it should claim that the passage of a couple of months constitutes

17   undue delay).  Plaintiff also filed the motion prior to the closing of this case.  Additionally,

18   Plaintiff requests that the Court sanction the SSA under the Court's inherent authority and not

19   Rule 11 or 37.  See Haeger v. Goodyear Tire & Rubber Co., 793 F.3d 1122, 1132 (9th Cir. 2015)

20   (holding that the court's inherent power may be used as a means to address the adequacy of

21   discovery responses).  Plaintiff's motion is not procedurally deficient.

22        The SSA next argues that it acted in good faith in the statements it made to Plaintiff and to

23   the Court regarding the existence of the check copies.  ECF No. 89 at 9.  The SSA states that

24   counsel for the SSA attempted to obtain copies of Plaintiff's disability checks in 2013 through the

25   TCIS but that the check images were unavailable.  See ECF No. 89-3, Grossnickle Decl. ¶ 6.

26   After subsequent searches, the SSA continued to conclude that the check copies were unavailable.

27   ECF No. 89-4, Illarmo Decl. ¶ 5.  Based on this investigation, the SSA argues it "set forth its good

28   faith belief that the checks were unavailable."  ECF No. 89 at 10.  Additionally, the SSA cites to

United States District Court
Northern District of California

its policy and procedural guide used by employees to process claims, which notes that photocopies of checks "are generally available for 6 years after date of issue."  POMS GN 02406.140(A), available at https://secure.ssa.gov/poms.nsf/lnx/0202406140.  The SSA contends that, at the time that it made these various representations, they "were reasonably based on both policy and a specific investigation."  ECF No. 89 at 10.

Ultimately, in April 2015, the SSA produced information regarding checks sent to Plaintiff, which included the check images.  ECF No. 89-1, Speight Decl. ¶ 9.  The SSA explains that it did not make this information available previously because of system limitations, see ECF No. 89-5, Haas Decl. ¶¶ 5-6, and because of counsel's general unawareness of the database systems, see ECF No. 89-4, Illarmo Decl. ¶ 6.

The Court finds that the SSA's conduct and alleged delay in producing the check images was reckless but does not rise to the level of bad faith.  However, recklessness alone is insufficient to justify the award of sanctions.  See Fink, 239 F.3d at 992.  Instead, recklessness must be met with an additional factor, "such as frivolousness, harassment, or an improper purpose."  Id. at 994.  Plaintiff has not provided evidence to support a finding of one of these additional factors.  SSA counsel did not know about the PACER database, and upon learning of it, the SSA requested the documentation of payments and provided this information to Plaintiff.  ECF No. 89 at 11.

Plaintiff cites to Haeger v. Goodyear Tire & Rubber Co. to support his motion sanctions based on the SSA's discovery misconduct.  In Haeger, plaintiffs were severely injured after a Goodyear G159 tire failed while they were driving on a highway.  793 F.3d at 1126.  The plaintiffs requested all test records for the G159 tires.  Id. at 1127.  Counsel for Goodyear delayed production of the relevant information, concealed relevant documents, and made false and misleading in-court statements on whether the tests were responsive to the request.  Goodyear subsequently produced two sets of tests responsive to plaintiffs' requests, and on the first day of trial, the parties reached a settlement.  Id. at 1129.  After the case settled, counsel for plaintiffs learned of a separate case involving the same tire and realized that Goodyear withheld evidence it was required to produce during discovery.  Id.  The court thereafter issued a proposed order to sanction Goodyear based on its failure to produce and its false representations that all responsive

documents had been produced.  Id.  Goodyear then inadvertently disclosed the existence of *additional* tests that had not been provided to plaintiffs.  Id.  The district court also found that Goodyear's Rule 30(b)(6) witness knew about, but falsely testified, about the later discovered tests at its deposition.  Id. at 1135.  The district court also compared the Haeger case to other cases involving G159 tests and found that Goodyear and counsel "took positions in other G159 cases directly contrary to the positions" before the district court.  Id. at 1130.  The district court concluded that defendants should have turned over all the tests because they were responsive to the plaintiffs' first request, but that the decision to withhold documents "was a bad faith attempt to hide responsive documents."  Id. at 1134.  Concluded the district court: the sanctioned party "adopted a plan of making discovery as difficult as possible" and repeatedly made false statements to the court "in an attempt to hide their behavior."  Id. at 1134–35.  Without the misconduct, the case likely "would have settled much earlier" and for considerably more money.  Id. at 1129–30.  The Ninth Circuit affirmed the $2.7 million sanction and non-monetary sanction against Goodyear and Goodyear's counsel for failing to produce testing data.

This case is dissimilar from Haeger, where the defendants were aware of responsive discovery but hid it and made false statements to the court to hide their behavior.  Here, because of the SSA's incomplete search, the SSA was unaware of the existence of the check images.  The SSA did not have actual knowledge of the existence of the checks, and did not repeatedly misrepresent to the Court that the check images did not exist despite knowledge of their existence.  Upon discovering the PACER database, counsel for the SSA requested and produced the responsive check records.

The Court also concludes that the SSA's motions to dismiss and motion for summary judgment were not filed frivolously, such that sanctions are warranted.  The Court granted the SSA's motion to dismiss the third amended complaint, ECF No. 40, and dismissed all counts of Plaintiff's fourth amended complaint except for his claim for mandamus, ECF No. 55.  As for the summary judgment motion, the only basis for Plaintiff's mandamus claim was the 2009 benefits award, and the Court determined that Plaintiff was entitled to discovery outside of the administrative record.

United States District Court
Northern District of California

1    This case dragged on far longer than it needed to.  The SSA did not treat its procedural or

2  discovery obligations with the seriousness and diligence they demanded.  But the blame for the

3  delay in concluding this case does not rest only at the SSA's feet.  Plaintiff asked the Court for

4  relief to which he was not entitled, requiring additional litigation, and sometimes failed to press

5  the SSA for information to which he was entitled.  As frustrating as the SSA's conduct was to the

6  Court, it cannot find that the SSA acted in bad faith, and the Court therefore denies Plaintiff's

7  request for sanctions and costs.  See Haeger, 793 F.3d at 1132 ("Before awarding sanctions

8  pursuant to its inherent power, the court must make an express finding that the sanctioned party's

9  behavior constituted or was tantamount to bad faith.").

10                                              **CONCLUSION**

11    For the foregoing reasons, the Court denies the motion for sanctions and costs.  The only

12  issue remaining before the Court is Plaintiff's mandamus action.  The Case Management

13  Conference currently scheduled for May 4, 2016 is advanced to March 2, 2016 at 2:00 p.m.  The

14  parties' joint case management conference statement is due by February 17, 2016.

15    IT IS SO ORDERED.

16  Dated:  January 19, 2016

17

18  _____
                              JON S. TIGAR
19                   United States District Judge

20

21

22

23

24

25

26

27

28